# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

2023 Fall Term

_____

No. 22-ICA-83

_____

FILED

**November 1, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

SWN PRODUCTION COMPANY, LLC,
Plaintiff Below, Petitioner,

v.

CITY OF WEIRTON and
CITY OF WEIRTON BOARD OF ZONING APPEALS,
Defendants Below, Respondents.

_____

Appeal from the Circuit Court of Brooke County
Honorable Jason A. Cuomo, Judge
Nos. CC-05-2021-P-35 & CC-05-2021-C-71

REVERSED
_____

Submitted:  September 19, 2023
Filed: November 1, 2023

Shawn N. Gallagher, Esq.
Kathleen Jones Goldman, Esq.
Buchanan Ingersoll & Rooney PC
Pittsburgh, Pennsylvania
Counsel for Petitioner

Ryan P. Simonton, Esq.
Margaret E. Lewis
Kay Casto & Chaney, PLLC
Morgantown, West Virginia

Vincent S. Gurrera, Esq.
Gurrera Law Offices, PLLC
Weirton, West Virginia

Daniel J. Guida, Esq.
Guida Law Office
Weirton, West Virginia
Counsel for Respondent City of
Weirton

JUDGE SCARR delivered the Opinion of the Court.

SCARR, JUDGE:

Petitioner, SWN Production Company, LLC ("SWN"), appeals the August 23, 2022, "Order Regarding Pre-Emption" entered by the Circuit Court of Brooke County. In that order, the circuit court concluded that Respondent City of Weirton's ("City") municipal zoning ordinances were not preempted by either the West Virginia Oil and Gas Act or the Natural Gas Horizontal Well Control Act ("Horizontal Well Act").[1] On appeal, SWN argues that the circuit court erred by failing to recognize that the Horizontal Well Act delegates "sole and exclusive authority" over all aspects of the permitting and location of oil and gas exploration and production activities to the Secretary of the West Virginia Department of Environmental Protection ("WVDEP").

For the reasons discussed below, this Court reverses the August 23, 2022, "Order Regarding Pre-Emption," entered by the Circuit Court of Brooke County.

## I. Facts and Procedural Background

SWN Production Company, LLC is a Texas-based natural gas exploration and production company. The City of Weirton is a Class II city[2] located in the northern panhandle.

---

[1] The Oil and Gas Act is codified within West Virginia Code § 22-6-1 *et seq.* The Horizontal Well Act is codified within West Virginia Code § 22-6A-1 *et seq.*

[2] West Virginia Code § 8-1-3 (1969) classifies cities with a population between 10,000 and 50,000 as Class II.

1

On June 11, 2021, SWN submitted its application for a conditional use permit to the City in order to obtain local zoning approval under the City's then existing Unified Development Ordinance ("UDO") for drilling at a well site located on a parcel within the City known as the Brownlee Site. Under the UDO, the setback requirement for drilling sites was 200 feet from any residential, church, or school use.

On July 7, 2021, the City enacted a new Unified Development Ordinance ("NUDO") which increased the setback requirement to 2,500 feet from any residential, church, or school use and removed oil and gas extraction as a permitted conditional use anywhere in the City except for industrial-zoned districts. The Brownlee Site is not within an industrial zone.

On August 3, 2021, and September 7, 2021, the City of Weirton Board of Zoning Appeals ("Board") conducted hearings on SWN's application for a conditional use permit. On October 1, 2021, the Board issued its written decision denying SWN's application. The Board reasoned that "SWN has failed to prove that the proposed conditional use is compatible with the goals of the [City's] Comprehensive Plan, including objective 2.3, which provides[,] in part[,] that future development in the Three Springs Drive area should be managed 'to avoid worsening traffic congestion and additional stress on other existing infrastructure.'"

On October 18, 2021, SWN applied to the West Virginia Department of Environmental Protection ("WVDEP") for permits to drill for and develop natural gas at the Brownlee Site. On February 8, 2022, WVDEP issued SWN Well Work Permit No. 47-009-00328-00-00 for the Brownlee Site.

On October 29, 2021, SWN filed a Petition for Writ of Certiorari in the Circuit Court of Brooke County seeking review of the Board's denial of SWN's conditional use permit. Also on October 29, 2021, SWN filed a Verified Complaint against the City in the Circuit Court of Brooke County. The Verified Complaint sought to have the circuit court declare that the West Virginia Oil and Gas Act preempted the UDO and NUDO. The Verified Complaint also asserted a claim for a taking by the City, as well as a count seeking injunctive relief to prevent the City from enforcing the UDO or NUDO. On March 14, 2022, the circuit court issued an order consolidating the two matters. In that order, the circuit court also stayed the issues presented in the Writ of Certiorari until the circuit court made a final determination on the preemption issues presented by the Verified Complaint. On March 29, 2022, SWN filed its First Amended Verified Complaint which set forth the same causes of action as the Verified Complaint but added information about the WVDEP permit for the Brownlee Site.

No discovery was conducted on the preemption issue and there was no hearing. On August 23, 2022, the circuit court issued its "Order Regarding Pre-Emption." In that order, the circuit court held that the Legislature did not intend for West Virginia

3

Code § 22-6-1 *et seq.* or West Virginia Code § 22-6A-1 *et seq.* to expressly or impliedly preempt the authority of municipalities to enact reasonable and rational zoning ordinances under West Virginia Code § 8A-1-1 *et seq.* The circuit court interpreted those statutes to mean:

> [T]he operation…and… permitting of [oil and gas] companies is…to be "largely, if not completely, regulated by the [WVDEP]; and that local municipalities, although not permitted to completely ban the lawful operation of oil and gas companies within their city limits, are permitted to pass reasonable and rational zoning ordinances/regulations to allow said companies to operate therein while protecting the health, welfare, and safety of its citizens."

The circuit court then noted: "If the Supreme Court of Appeals of West Virginia wants to tell our communities they have lost that ability…then it will have to do so without having had any express direction from our [L]egislature." The circuit court dismissed SWN's preemption count from its amended complaint, lifted the stay on the issues presented in the Writ of Certiorari, and permitted the parties to proceed with discovery on all other remaining issues. It is from this order that SWN appeals to the Intermediate Court of Appeals.

On September 15, 2023, four days before oral argument, this Court was notified by the City's counsel that the NUDO enacted on June 7, 2021, was repealed by the City on or about September 11, 2023, re-enacting the previous UDO adopted in 2005. Oral argument was held before this Court on September 19, 2023, with all parties appearing in person.

4

## II. Standard of Review

"A circuit court's entry of a declaratory judgment is reviewed *de novo*." Syl. Pt. 3, *Cox v. Amick*, 195 W. Va. 608, 466 S.E.2d 459 (1995). Our decision in this case requires an examination of various statutory provisions and resolutions of questions of law. "Where the issue on an appeal from the circuit court is clearly a question of law involving an interpretation of a statute, we apply a *de novo* standard of review." *City of Morgantown v. Nuzum Trucking Co.*, 237 W. Va. 226, 230, 786 S.E.2d 486, 490 (2016) (quoting Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995)).

## III. Discussion

As a preliminary matter, this Court notes that the City's recent repeal of the NUDO, raises the issue of mootness. The repealed ordinance appears to have eliminated the primary setback requirement at issue in this case; however, during oral argument, the parties indicated that there were and are still additional steps and regulatory requirements under the re-enacted UDO from 2005 before SWN may proceed with drilling, even after the WVDEP had issued them a permit to begin doing so.[3] Thus, this Court finds that this

---

[3] Additionally, SWN argues that both the UDO and NUDO are facially preempted. Further, this Court is not aware of the additional requirements that SWN must complete before the City will issue them a permit to begin drilling.

matter is not moot, and even if it were, it would fall into one of the exceptions to the mootness doctrine.[4]

SWN argues that the circuit court erred by determining that municipal zoning regulations are neither expressly or impliedly preempted by the West Virginia Oil and Gas Act, West Virginia Code § 22-6-1 *et seq.*, as amended to address horizontal drilling by West Virginia Code § 22-6A-1 *et seq.*, where the Horizontal Well Act delegates "sole and exclusive authority" over all aspects of the permitting and location of oil and gas exploration and production activities to the Secretary of the West Virginia Department of Environmental Protection.

---

[4] The West Virginia Supreme Court of Appeals has repeatedly stated:

> "Three factors to be considered in deciding whether to address technically moot issues are as follows: first, the court will determine whether sufficient collateral consequences will result from determination of the questions presented so as to justify relief; second, while technically moot in the immediate context, questions of great public interest may nevertheless be addressed for future guidance of the bar and of the public; and third, issues which may be repeatedly presented to the trial court, yet escape review at the appellate level because of their fleeting and determinate nature, may appropriately be decided."

Syl. Pt. 3, *State ex rel. W. Va. Secondary Sch. Activities Comm'n. v. Cuomo*, __ W. Va. __, 880 S.E.2d 46 (2022) (quoting Syl. Pt. 1, *Israel ex rel. v. W. Va. Secondary Sch. Activities Comm'n.*, 182 W. Va. 454, 388 S.E.2d 480 (1989)).

The City argues in response that there is no express or implied preemption of its local zoning laws within West Virginia Code § 22-6-1 *et seq.*, and the City has specific authority to adopt zoning laws under the Land Use Planning Act, West Virginia Code § 8A-7-1 *et seq.*

## A. Legislative Acts

Because our analysis requires this Court to reconcile the meaning of West Virginia Code § 22-6-1 *et seq.*, and § 22-6A-6 *et seq.* with West Virginia Code § 8A-1-1 *et seq.*, we must attempt to ascertain the intent of the Legislature.[5] *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975) ("The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature.") "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." *City of Morgantown v. Nuzum Trucking Co.*, 237 W. Va. 226, 230, 786 S.E.2d 486, 490 (2016) (quoting Syl. Pt. 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951)).

---

[5] This opinion only addresses preemption in regard to the West Virginia Code § 22-6A-1 *et seq.*, the horizontal well act. This Court notes that this act was enacted after the already existing West Virginia Oil and Gas Act, amending it for the sole purpose of addressing horizontal drilling.

Under Chapter 22 of the West Virginia Code, titled "Environmental Resources" our Legislature created the West Virginia Department of Environmental Protection ("DEP") for the purpose of:

> [C]arry[ing] out the environmental functions of government in the most efficient and cost[-]effective manner, to protect human health and safety, and to the greatest degree practicable, to prevent injury to plant, animal and aquatic life, improve and maintain the quality of life of our citizens, and promote economic development consistent with environmental goals and standards.

W. Va. Code § 22-1-1(a)(5) (2001).

> Further, the Legislature declared that:
>
> It is the policy of the State of West Virginia, in cooperation with other governmental agencies, public and private organizations, and the citizens of the state, to use all practicable means and measures to prevent or eliminate harm to the environment and biosphere, to create and maintain conditions under which man and nature can exist in productive harmony, and fulfill the social, economic and other requirements of present and future generations. The purpose of this chapter are:
>
> (1) To strengthen the commitment of this state to restore, maintain and protect the environment;
>
> (2) To consolidate environmental regulatory programs in a single state agency;…
>
> (8) To improve the management and effectiveness of state environmental protection programs;

W. Va. Code § 22-1-1(b).

Specifically, the West Virginia Oil and Gas Act provides that the Secretary of the WVDEP (or their designee) "shall have as his or her duty the supervision of the execution and enforcement of matters related to oil and gas set out in § 22-6-1 *et seq.*[] [and] § 22-6A-1 *et seq.*… of this code." W. Va. Code § 22-6-2(a) (2023). Also, "[t]he [S]ecretary shall have full charge of the oil and gas matter set out in § 22-6-1 *et seq.*[] [and] § 22-6A-1 *et seq*….of this code." W. Va. Code § 22-6-2(c). Further, the secretary shall "[p]erform all duties as the permit issuing authority for the state in all matters pertaining to the exploration, development, production, storage and recovery of this state's oil and gas." W. Va. Code § 22-6-2(c)(15).[6] "[T]he Legislature has made it clear…that all environmental programs in West Virginia are to be regulated by the D[epartment] of Environmental Protection." *Solid Waste Serv. of W. Va. v. Pub. Serv. Comm'n*, 188 W. Va. 117, 122, 422 S.E.2d 839, 844 (1992).

## B. Preemption

As a general rule, "preemption is disfavored in the absence of convincing evidence warranting its application." *In re Flood Litigation*, 216 W. Va. 534, 547, 607

---

[6] The Secretary is also empowered to "[a]dopt rules with respect to the issuance, denial, retention, suspension or revocation of permits authorizations and requirements of this chapter, which rules shall assure that the rules, permits, and authorizations issued by the [S]ecretary are adequate to satisfy the purposes of § 22-6-1 *et seq.*, [] [and] § 22-6A-1 *et seq.* … of this code…." W. Va. Code § 22-6-2(c)(16).

S.E.2d 863, 876 (2004) (quoting *Hartley Marine Corp. v. Mierke*, 196 W. Va. 669, 673, 474 S.E.2d 599, 603 (1996)). "As a result, there is a strong presumption that [the Legislature] does not intend to preempt areas of traditional [municipal] regulation." *Id.* (quoting *Chevy Chase Bank v. McCamant*, 204 W. Va. 195, 300, 512 S.E.2d 217, 222 (1998)). Nevertheless, where supported preemption may either be express or implied. *See id.* "To establish a case of express preemption requires proof that Congress, through specific language, preempted the specific field covered by state law…. To prevail on a claim of implied preemption, 'evidence of a congressional intent to pre-empt the specific filed covered by state law' must be pinpointed." *Id.* (quoting *Hartley*, 196 W. Va. at 674, 474 S.E.2d at 604).

"A municipal corporation is a creature of the State[] and can only perform such functions of government as may have been conferred by the constitution[] or delegated to it by the law-making authority of the State." Syl. Pt. 1, *Toler v. City of Huntington*, 153 W. Va. 313, 168 S.E.2d 551 (1969) (quoting Syl. Pt. 1, *Brackman's Inc. v. City of Huntington*, 126 W. Va. 21, 27 S.E.2d 71 (1943)). "A municipal corporation has only the powers granted to it by the [L]egislature, and any such power it possesses must be expressly granted or necessarily or fairly implied or essential and indispensable. If any reasonable doubt exists as to whether a municipal corporation has a power, the power must be denied." Syl. Pt. 2, *State ex rel. Charleston v. Hutchinson*, 154 W. Va. 585, 176 S.E.2d 691 (1970). "When a provision of a municipal ordinance is inconsistent or in conflict with a statute enacted by the Legislature the statute prevails and the municipal ordinance is of

10

no force and effect." Syl. Pt. 1, *Davidson v. Shoney's Big Boy Rest.*, 181 W. Va. 65, 380

S.E.2d 232 (1989) (quoting Syl. Pt. 1, *Vector Co. v. Bd. of Zoning Appeals*, 155 W. Va.

362, 184 S.E.2d 301 (1971)); *see also Brackman's Inc.*, 126 W. Va. at __, 27 S.E.2d at 78

(any inconsistency between state and local law "must be resolved in favor of the State").

A municipal ordinance conflicts with a state statute if it espouses a view that is inconsistent

and irreconcilable with that contained in a state statute. *See Vector Co*, 155 W. Va. at 366-

67, 184 S.E.2d at 304 (1971).


i.     **Express Preemption**

First, SWN argues that the Legislature in enacting West Virginia Code § 22-

6A-6(b) (2011) plainly and expressly stated its intent to preempt the entire field of oil and

gas regulation, even in those areas that are traditionally left to local zoning ordinances,

such as site location.  Specifically, West Virginia Code § 22-6A-6(b) provides that:

> Except for the duties and obligations conferred by statute upon
> the shallow gas well review board pursuant to article eight,
> chapter twenty-two-c of this code, the coalbed methane review
> board pursuant to article twenty-one of this chapter, and the oil
> and gas conservation commission pursuant to article nine,
> chapter twenty-two-c of this code, *the [WVDEP] has sole and
> exclusive authority to regulate the permitting, location*,
> spacing, drilling, fracturing, stimulation, well completion
> activities, operation, *any and all other drilling and production
> processes*, plugging and reclamation *of oil and gas wells* and
> production operations *within the state*.

(Emphasis Added).

11

In response the City argues that there is no provision in the Land Use Planning Act that exempts oil and gas development from zoning laws. Further, the City asserts that the Legislature did address zoning applications to oil and gas development specifically within the Land Use Planning Act and chose not to prohibit zoning. West Virginia Code § 8A-7-10(3) (2004) provides that:

> Nothing in this chapter authorizes an ordinance, rule or regulation preventing or limiting, outside of municipalities or urban areas, the complete use (i) of natural resources by the owner; or (ii) of a tract of contiguous tracts of land of any size for a farm or agricultural operation as defined in § 19-19-2 by the owner.

The Legislature is well aware of how to preempt zoning laws when it intends to do so. In the Land Use Planning Act, it made express preemptions for other uses: group residential facilities must be permitted in all residential districts pursuant to West Virginia Code § 8A-11-1; essential utilities and equipment are a permitted use in any zoning district, West Virginia Code § 8A-7-3(e). This shows that the Legislature is presumed to know the effect of its actions, and it will speak clearly when it intends to preempt another law.

To establish a case of express preemption requires proof that the legislature, through specific and plain language in the statute, preempted the specific field covered by local law. *See Morgan v. Ford Motor Co.*, 224 W. Va. 62, 69-70, 680 S.E.2d 77, 84-85 (2009). However, this Court finds it unnecessary to engage in a more exhaustive express preemption analysis because, in this case, West Virginia Code § 22-6-1 *et seq*., and § 22-

6A-6 *et seq*. clearly preempt the City's NUDO (which has been repealed) and UDO under implied conflict preemption.[7]

### ii. Implied Preemption

Where a law does not expressly preempt other laws, it may still operate to preempt them if it is intended to occupy the entire regulatory field or if there exists a conflict between the laws such that compliance with both is impossible. *See Morgan,* 224 W. Va. 62, 680 S.E.2d 77, 85 (2009) at fn. 8. There are two types of implied preemption, which are field preemption and conflict preemption. *See In re Flood Litigation*, 216 W. Va. 534, 547, 607 S.E.2d 863, 876 (2004).[8]

> [F]ield pre-emption[] [occurs] where the scheme of federal regulation is " ' so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,'" and conflict pre-emption[] [occurs] where "compliance with both federal and state regulations is a

---

[7] In reaching our decision, we take no position on the policy issues raised by these preemption arguments before us in regard to express preemption, leaving that up to the Legislature. Preemption clearly raises issues of line drawing between different state statutes enacted by the Legislature, and although there are certainly opposing arguments that can and have been made in regard to express preemption, we find that there is sufficient direction by the Legislature to conclude the City's ordinance is preempted under implied conflict preemption.

[8] The parties also dispute whether West Virginia Code § 22-6A-1 *et seq.,* impliedly preempts the City under implied field preemption. However, because this Court finds that implied conflict preemption resolves that matter before us, we will not engage in an analysis of implied field preemption.

13

physical impossibility," or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress[.]"

*Id.* (citation omitted).

On appeal, SWN argues that the Horizontal Well Act directly conflicts with the specific requirements of the City's ordinances. For example, the Horizontal Well Act provides that "the center of well pads may not be located within six hundred twenty-five feet of an occupied dwelling structure." *See* W. Va. Code § 22-6A-12 (2011). In contrast, the NUDO, which only permits oil and gas extraction in the City's industrial districts, provides that "[n]o well may be located closer than two thousand five hundred (2,500) feet of any residential, church or school use." *See* NUDO § 9.6.20(a). Further, SWN asserts that even under the now re-enacted UDO, the Horizontal Well Act and the local zoning ordinance have fundamental conflicts, because the UDO purports to vest final approval of well locations in a body other than WVDEP. The City's approval scheme is in direct conflict with the Horizontal Well Act's express language, which vests WVDEP with "sole and exclusive" authority to regulate the "permitting" and "location" of horizontal gas wells. W. Va. Code § 22-6A-8(d) (2011). SWN argues that this language in the Horizontal Well Act cannot be reconciled with the City's local ordinance which provides requirements or vests final approval in a body other than the WVDEP. We agree.

In response, the City argues that there is a false conflict between the City's local ordinance under the Land Use Planning Act and the Horizontal Well Act. The zoning

14

regulations at issue make no attempt to regulate the operation of oil and gas wells governed by Chapter 22, Article 6. The City relies on *Longwell v. Hodge*, 171 W. Va. 45, 297 S.E.2d 820 (1982), where the Supreme Court of Appeals found a false conflict, stating:

> What we have here is the perfect example of a "false conflict." The State, by licensing the sale of beer, neither acquires, nor seeks to acquire, any positive interest in the operation of taverns or restaurants selling beer at particular locations within municipalities. Rather, the State's interest is defensive, to assure that beer is not sold by an "unsuitable person" or in an "unsuitable place." *See* W. Va. Code § 11-16-12 [1972]. Thus, to the extent that a municipality is not seeking to encroach on the licensing or taxing authority the State holds unto itself, the municipality may zone either to allow or not allow beer-selling restaurants just as it may zone other land uses.

*Longwell*, 171 W. Va. at 49, 297 S.E.2d at 824.

Conflict preemption arises where a state statute and municipal ordinance are in direct conflict, where a municipal ordinance stands as an added obstacle to an already enacted legislative statute. *See Metro Tristate, Inc. v. Pub. Serv. Comm'n of W. Va.*, 245 W. Va. 495, 504, 859 S.E.2d 438, 447 (2021) ("Conflict preemption arises from a direct clash between state and federal law, and 'conventional conflict pre-emption principles require pre-emption "where […] state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."'") (quoting *Boggs v. Boggs*, 520 U.S. 833, 844 (1997)). Under conflict preemption, municipal ordinances are preempted

15

where they directly conflict with a statute enacted by the Legislature. *See Id.*[9] "When a provision of a municipal ordinance is inconsistent or in conflict with a statute enacted by the Legislature the statute prevails and the municipal ordinance is of no force and effect." Syl. Pt. 2, *Am. Tower Corp. v. Common Council of Beckley*, 210 W. Va. 345, 557 S.E.2d 752 (2001) (quoting Syl. Pt. 1, *Vector Co.*, 155 W. Va. at 362, 367, 184 S.E.2d at 301, 304). Further, the West Virginia Constitution provides that "any such law or ordinance so adopted, shall be invalid and void if inconsistent or in conflict with this Constitution or the general laws of the State then in effect, or thereafter, from time to time enacted." W. Va. Const. art. VI, § 39a.

Under West Virginia Code § 22-6-1 *et seq.* as amended by West Virginia Code § 22-6A-1 *et seq.*, the Legislature explicitly set forth a comprehensive framework for the application for oil well permits. The applicant is required to specifically set forth the type of well, the location, the depth, the purpose of the well, and fees associated with the well, etc. *See* W. Va. Code §§ 22-6A-7, 9; *see* also W. Va. Code § 22-6-6(c) (1994). The Horizontal Well Act provides that the WVDEP may not issue a drilling permit if it determines that: "(1) The proposed well work will constitute a hazard to the safety of persons; (2) The plan for soil erosion and sediment control is not adequate or effective; (3) Damage would occur to publicly owned lands or resources; or (4) The proposed well work

---

[9] "Under an implied conflict preemption analysis, federal statutory or policy language explicitly signaling an intent to preempt state law is not necessary." *Metro*, 245 W. Va. at 504, 869 S.E.2d at 447.

16

fails to protect fresh water sources or supplies."[10] W. Va. Code § 22-6A-8(d). Additionally, the WVDEP must confirm that all well location restrictions set forth in the Horizontal Well Act have been satisfied. *See* W. Va. Code § 22-6A-8(e). Finally, the WVDEP is tasked with promptly reviewing and considering all comments raised by the public and appeals of applications.[11] *See* W. Va. Code §§ 22-6A-8(f), 9. The circuit court held that because the City is generally empowered by the Land Use Planning Act, West Virginia Code § 8A-7-1, to enact traditional zoning laws, and that the Land Use Planning Act does not specifically limit the City's ability to regulate oil and gas, the City retains the power to enact and regulate oil and gas through its zoning laws; even when a permit has been approved authorizing a proposed well in a specific location.

Here, the objective terms of the Horizontal Well Act directly conflict with the additional requirements of the City's ordinance. On October 1, 2021, the Board issued its written decision denying SWN's application. The Board reasoned that "SWN has failed to prove that the proposed conditional use is compatible with the goals of the Comprehensive Plan, including objective 2.3, which provides, in part, that future development in the Three Springs Drive area should be managed 'to avoid worsening

---

[10] The Director is given the sole discretion to authorize or deny the issuance of a permit on the basis of numerous factors. *See* W. Va. Code §§ 22-6-6(h), 11.

[11] Further, pursuant to West Virginia Code §§ 22-6-9, -17, the regulations further state the specific requirements for notice to property owners, the procedure for filing comments, the process for setting hearings upon objections to such drilling, as well as the procedures for an appeal process.

traffic congestion and additional stress on other existing infrastructure.'" On October 18, 2021, SWN applied to the WVDEP for permits to drill for and develop natural gas at the Brownlee Site. On February 8, 2022, WVDEP issued SWN Well Work Permit No. 47-009-00328-00-00 for the Brownlee Site.

Clearly, under the now repealed NUDO there was a direct conflict between the state statute and city ordinance. Under the City's NUDO the setback requirement was 2,500 feet, while the state only requires a setback requirement of 625 feet. *See* W. Va. Code § 22-6A-12; *see also* NUDO § 9.6.20(a). These setback requirements cannot be reconciled and are in direct conflict with each other. Further, to the extent that the City's re-enacted UDO has other requirements which conflict with the state statute, it is also preempted under conflict preemption.[12] Even absent express preemption, the City's ordinance is in direct conflict with the state's Horizontal Well Act, where the Legislature has vested in the WVDEP sole and exclusive authority to regulate the permitting, location, and any and all other drilling and productions processes of oil and gas wells and production operations within the state. *See* W. Va. Code § 22-6A-6(b).[13]

---

[12] This Court is not saying that fees or certain paperwork create a direct conflict, however, to the extent that SWN must go through further hearings or administrative procedures, and/or there are other regulatory requirements that conflict, a direct conflict exists between the City's UDO and the WVDEP's authority to grant permits.

[13] *See EQT Prod. Co. v. Wender*, 870 F.3d 322 (4th Cir. 2017). There, a county commission, relying on its general authority to abate public nuisances, issued a blanket ban on all disposal of wastewater from drilling operations within county lines based on concerns that wastewater storage locations were leaking wastewater into local waterways.

18

Once the WVDEP issued a permit, the City cannot hinder SWN's ability to begin drilling. The City's approval scheme is in direct conflict with the Horizontal Well Act which vests WVDEP with "sole and exclusive authority" to regulate the "permitting" and "location" of horizontal gas wells. *See* W. Va. Code § 22-6A-8(b). This language cannot be reconciled with the City's position that a municipality retains the authority to require zoning approval for an oil or gas well that has already been approved under the state's permitting program.

## IV. Conclusion

For the foregoing reasons, this Court reverses the August 23, 2022, "Order Regarding Pre-Emption," entered by the Circuit Court of Brooke County.

Reversed.

---

*See Id.* The storage and disposal of wastewater is specifically regulated by the WVDEP who is charged with protecting against water pollution arising from oil and gas production. *See Id.* In *EQT*, the Fourth Circuit held that the county's ordinance created a conflict with the WVDEP's statutory authority and was preempted by state law. *See Id*. at 332, 336-37.

19