297 S.E.2d 820

**James C. LONGWELL, et al.**

v.

**John H. HODGE, et al., etc.**

**No. 15637.**

Supreme Court of Appeals of
West Virginia.

Oct. 28, 1982.

Rehearing Denied Dec. 15, 1982.

J. Patrick Bower, Clarksburg, for appellants.

Dean Ramsey, Larry O. Ford, Jones, Williams, West & Jones, Clarksburg, for appellees.

NEELY, Justice:

Appellants James Longwell and Peggy Stevens are, respectively, owner and lessee of property located at 138 East Main Street in Bridgeport, West Virginia. Mr. Longwell purchased the property in 1971. At that time a restaurant selling beer had been operated on the property for approximately 20 years. Although the restaurant did not meet the requirements of a 1955 zoning ordinance, it was permitted to operate under a so-called "grandfather" clause since its operation predated the ordinance.

Between 1975 and 1979 the restaurant on the property was closed. During that period, Mr. Longwell extensively remodeled the restaurant, and then leased it to Ms. Stevens in August of 1979. The appellants anticipated that Ms. Stevens would operate a restaurant selling beer on the premises and, to that end, she secured a state beer license.

■ In October of 1979, however, the City of Bridgeport amended its Zoning Ordinance, and the Bridgeport Planning and Zoning Commission in December of 1979 determined that a use of the restaurant to sell beer would neither conform to the new ordinance nor fall within the non-conforming use [1] provisions of the ordinance. An appeal was taken to the Bridgeport Board of Zoning Appeals, which held hearings on 13 March 1980 and subsequent to a new application by the appellants, on 23 June, 30 June and 28 July 1980. On 26 November 1980 the appellants received a "final order" of the Board of Zoning Appeals denying their appeal.

A timely appeal was taken from the final order of the Board of Zoning Appeals to the Circuit Court, which denied the appeal. The Circuit Court held that the Board of Zoning Appeals had acted properly within its authority and, furthermore, that the doctrine of *res judicata* operated to foreclose appellants' appeal because appellants had failed to appeal the initial adverse decision of the Board of Zoning Appeals. We agree with the Circuit Court, and affirm its decision, although for different reasons than those expressed by the lower court.

## I

■ We overrule the holding of the Circuit Court with respect to the doctrine of *res judicata.* The Court below evidently concluded that the decision reached by the Board of Zoning Appeals at their meeting on 13 March 1980 was final, since no addi-

tional formal application was made for a rehearing and no additional facts were presented subsequent to that meeting. In that event, the 24 December 1980 petition to the Circuit Court for a writ of *certiorari* was late under the statutory time limitation for such review. *W.Va.Code,* 8–24–59 [1969], concerning review in the Circuit Court by *certiorari,* provides that "[t]he petition must be presented to the court within thirty days after the date of the decision or the order of the board of zoning appeals complained of."

We note that *Code,* 8–24–59 [1969] specifies "thirty days after the date of the decision or order," and that the order in the record before us that the respondent Board characterizes as its final order is dated 25 November 1980. The appeal to the circuit court from this order was timely filed.

The conclusion of the court below is based on an order resulting from the original hearing held by the Board of Zoning Appeals on 13 March 1980. Although, as a general rule, such a board may not conduct a second hearing where "all the facts and questions considered at the ... hearing (are) identical to those considered and decided by the Board in its first proceeding ...," *Wolfe v. Forbes,* 159 W.Va. 34, 217 S.E.2d 899 (1975), we do not agree that the application of the rule was mandated in this case. First, the record indicates that at the later hearings questions concerning parking space were raised and discussed at some length, as was the application to appellants of a recent decision, favorable to a similarly situated restaurant, which had been made by the Board since the hearing of 13 March 1980. More importantly, none of the parties objected to the second battery of hearings—the invocation of the *res judicata* theory was the product of the reviewing court, *sua sponte.* We are unable to affirm the decision of the court below on this basis.

---

1. A non-conforming use is a use which, although it does not conform with existing zoning regulations, existed lawfully prior to the enactment of the zoning regulations. These uses are permitted to continue, although technically in violation of the current zoning regulations, until they are abandoned. An exception of this kind is commonly referred to as a "grandfather" exception. A variance, on the other hand, is a grant of permission to a property owner to depart from the literal requirements of a zoning regulation, generally given where literal compliance would cause undue hardship to the owner.

 Since American justice is, largely, procedural justice, procedure is not to be taken lightly. However where, as here, the deciding tribunal is a more or less informal body staffed by lay members, no legitimate purpose is served by a court's undertaking an overly exacting procedural review. The focus of judicial review of such tribunals should be on the law, the merits of the decision being reviewed, and the policies included in the decision, and not on Rhadamanthine procedural scrutiny. All parties, including the Board of Zoning Appeals, essentially treated the petition of 28 March 1980 as a petition for rehearing,[2] and it was advanced during the time period specified for review by the Circuit Court. We do not have here an attempt to reopen access to the Circuit Court by requesting a spurious new hearing after the time period for appeal from an earlier hearing had run. While time periods become important whenever reliance interests have been created,[3] there were no reliance interests of third parties implicated here, and no reason for the court below to bind itself to strict time period review. We agree however, with the Circuit Court that the decision of the Bridgeport Board of Zoning Appeals was proper on the merits. Since we have all the information that would be available to the Circuit Court on remand before us, a disservice to judicial economy would be done by remanding this case.

## II

 Bridgeport's zoning ordinance provides that "[t]he discontinuance of a non-conforming use for a period of six (6) months ... shall be considered an abandonment thereof, and such non-conforming use shall not thereafter be revived." *City of Bridgeport Zoning Ordinance*, Article IV, § 3(a). A "grandfather" exception alleviates the initial hardship to the owner of non-conforming property of immediate compliance with a new ordinance. A "grandfather" clause, however, is not designed to create a continuing, protected, non-conforming use within the zoned area, running with the land and inuring indefinitely to the benefit of the owner. "Grandfather" exceptions contemplate the eventual extinction of the non-conforming uses. Under Bridgeport's zoning ordinance the terms of this extinction are made specific—the ordinance states that a "grandfather" exception is extinguished when any non-conforming use is discontinued for a period of six months. Without a doubt, the Zoning Board could, in light of the terms of the ordinance, reasonably have concluded that

**2.** A look at the procedural rules of formal tribunals instructs us that some mechanism for allowing a challenge to a tribunal's judgment in that tribunal, rather than on appeal, is inherently reasonable. For example, this Court allows a petition for rehearing under Rule 24(a), *W.Va. R.App.P.* That rule provides:

> A petition for rehearing, together with twelve copies thereof, may be filed within thirty days after entry of judgment unless the time is shortened or enlarged by order. The petition shall state with particularity the points of law or fact which in the opinion of the petitioner the Court has overlooked or misapprehended and shall contain such argument in support of the petition as the petitioner desires to present. Oral argument in support of the petition will not be permitted unless the Court otherwise orders. No answer to a petition for rehearing is required, but if the rehearing petition is granted the other parties shall be notified and may be requested to file further a counter-petition and memorandum of authorities. If a petition for rehearing is granted, the Court may make a final disposition of the cause without

> reargument or may restore it to the calendar for reargument or resubmission or may make such other orders as are deemed appropriate under the circumstances of the particular case.

In the trial courts, Rule 59, *W.Va.R.C.P.* allows motions for new trials and stays the effect of a previous final order until such time as the court passes upon the motion. *Mooney v. Barton*, 155 W.Va. 329, 184 S.E.2d 322 (1971). While the common law petition for rehearing is abolished by Rule 60(b), *W.Va.R.C.P.*, both Rule 59 and Rule 60(b), *W.Va.R.C.P.*, can be used to challenge a trial court's decision in that court, rather than on appeal. Consequently, it is only reasonable to infer that in the absence of a tribunal's procedural rule expressly excluding the use of a petition for rehearing to solicit a correction of alleged errors, such a procedure is reasonable and appeal periods should not begin to run until the tribunal has acted upon such a petition that has been filed in a timely manner and in good faith.

**3.** See, for example, our recent discussion of the reliance question in *Bailey v. SWCC*, 170 W.Va. 771, 296 S.E.2d 901 (1982).

the non-conforming use had been abandoned. Furthermore, it was within their authority to do so. Thus we affirm the lower court's holding on the basis that, during the period from 1974 to 1979 when no restaurant selling beer was operating on the premises the property owner's "grandfathered" right to sell beer expired.

■ It is in this context that we must examine the appellants' assertion that the so-called "prior approval" exception to the zoning ordinance gives them some protection. The ordinance provides as follows:

Nothing herein contained shall require any change in the plans, construction or designated use of a building complying with existing laws, a permit for which had been duly granted before the date of adoption of this Ordinance or any applicable amendment thereto, providing that said building shall be completed according to such plans as filed within six (6) months from the date of this Ordinance.

*Bridgeport Zoning Ordinance*, Article IV, § 2(f), as amended in 1979.

The record indicates that the appellants requested a building permit for the renovations they undertook, and were told that a permit was not required. Although they admittedly never obtained a building permit, the appellants contend that their attempts to obtain one put the City of Bridgeport on notice of the construction work being done, and that their energetic attempts to obtain a building permit should, therefore, bring them within the protection of the exception to the ordinance.

The failure of this argument is apparent from the language of the exception itself. The Ordinance requires that the building comply with existing laws if the exception is to apply and, once the "grandfathered" right expired six months after the restaurant stopped operating in 1974, the appellants' premises were no longer "complying

with existing laws." By the terms of the ordinance, the "prior approval" exception could only stand on the shoulders of the previous "grandfather" exception for six months after the date of the discontinuance of the non-conforming use. Even if the appellants had been granted a building permit, we could not use the "prior approval" exception to reverse the Board's decision— the application of this exception to the appellants' restaurant expired with the "grandfather" exemption.

### III

Finally, the appellants argue that the State's approval of their application for a beer license is effectively overruled by the Board of Zoning Appeals' denial of permission to the appellants to sell beer at this restaurant and that resolution of this conflict in favor of the Board would be inimical to the policy of State control over the sale of liquor and beer. While we are sympathetic with the appellants' concern for the State's authority, our concern does not require the result the appellants suggest.

■ What we have here is the perfect example of a "false conflict."[4] The State, by licensing the sale of beer, neither acquires, nor seeks to acquire, any positive interest in the operation of taverns or restaurants selling beer at particular locations within municipalities. Rather, the State's interest is defensive, to assure that beer is not sold by an "unsuitable person" or in an "unsuitable place." *See, W.Va.Code*, 11–16–12 [1972]. Thus, to the extent that a municipality is not seeking to encroach on the licensing or taxing authority the State holds unto itself, the municipality may zone either to allow or not allow beer-selling restaurants just as it may zone other land uses.

The authority from other jurisdictions, without going so far as to apply our false conflict analysis, effectively supports our

---

4. The grant of authority to municipalities to control their development with zoning provisions comes from the State, and there can be no doubt that the State is sovereign over its municipalities. The conflict in this case, such as it is, is between the municipality's power to enforce the zoning authority delegated to it by the State, *W.Va.Code*, 8–24–39 [1969] and the power of the West Virginia non-intoxicating beer commissioner to enforce the licensing authority delegated to him by the State, *W.Va.Code*, 11–16–18 [1951].

position. In *Desert Turf Club v. Board of Supervisors*, 141 Cal.App.2d 446, 296 P.2d 882 (1956), the California court forbade a local zoning board from, in effect, legislating the morality of horse racing, but acknowledged the authority of the zoning board where it "has a proper field for the operation of its discretion in the enforcement of its zoning ordinance." *Id.* 296 P.2d at 888. The Supreme Court of Iowa held in *Plaza Recreation Center v. Sioux City*, 253 Iowa 246, 111 N.W.2d 758 (1961), that a municipality may use reasonable means to control the sale or use of alcoholic beverages by restricting their sale or use to designated zones or districts. The Court of Civil Appeals of Texas has held that a municipality may validly prohibit the sale of liquor in zoned areas, concluding that "[t]he power of a city to zone its territory for use purposes and the power of the State of Texas to regulate the liquor industry are not in conflict." *Messengale v. City of Copperas Cove*, 520 S.W.2d 824, 829 (1975). Perhaps most illuminating are a pair of New York cases. In *Town of Onondaga v. Hubbell*, 19 Misc.2d 999, 188 N.Y.S.2d 807, (1959), *aff'd*, 9 A.D.2d 1024, 196 N.Y.S.2d 592 (1959), the court held that the award of a state beer license would not supervene the town zoning ordinance, and that the town did not, by enjoining the violation of its zoning ordinance, unlawfully infringe on the power of the State to regulate the sale of beer. The same court in *Cannon v. City of Syracuse*, 72 Misc.2d 1072, 340 N.Y.S.2d 944 (Sup.Ct.1973) struck down a zoning rule requiring a city permit to operate a beer-selling restaurant where it found a "direct, explicit attempt by the city to regulate an area that the State has preempted." 72 Misc.2d at 1074, 340 N.Y.S.2d at 947, and distinguished *Onondaga*, *supra*, because the rule in that case applied to all restaurants within a zone.

Although the risks of briefly summarizing a large body of law are great, one can safely conclude that, by and large, municipal zoning regulations interfering with state regulation in other areas will be upheld to the extent that the interference is the coincidental by-product of the municipal zoning board's legitimate pursuit of its delegated goals. Or, to put it another way, that the conflict between state and municipality is "false." *See generally*, Rathkopf, *Law of Zoning and Planning*, 4th ed., Vol. 2, Chap. 31 (1977); Annot., 9 A.L.R.2d 877 (1950).

Thus, with the substantial weight of authority behind us, we conclude that the exercise of its delegated zoning authority by the Bridgeport Board of Zoning Appeals does not in this case conflict with the purpose of the State beer licensing system. We expressly hold that in the absence of a statute that explicitly preempts for the State the right exclusively to control whether and where beer will be sold, the possession of a State beer license is merely a necessary, but not a sufficient, condition for its sale in municipalities whose properly enacted zoning ordinances regulate the whereabouts of beer-selling restaurants.

Accordingly, the judgment of the Circuit Court of Harrison County is affirmed on the merits.

Affirmed.