399 S.E.2d 879

**STOP AND SHOP, INC.**

v.

**BOARD OF ZONING APPEALS OF WESTOVER, W.V., et al.**

**No. 19197.**

Supreme Court of Appeals of West Virginia.

Nov. 29, 1990.

Michelle C. Widmer, Westover, for Stop and Shop, Inc.

Mary Kay Hansen, Morgantown, for City of Westover.

Robert Dinsmore, Morgantown, for Intervenors.

NEELY, Chief Justice:

This is an appeal from an order of the Circuit Court of Monongalia County denying appellant, Stop and Shop, a writ of mandamus to compel the City of Westover to issue a building permit for Stop and Shop to build a parking lot and driveway on a residential lot adjoining its premises. The proposed parking lot at issue would be located on land now zoned residential and the driveway would send traffic onto Crowl street, a residential street.

On 27 August 1934, Stop and Shop's predecessors acquired from the Prudential Insurance Company the original grocery store site at the intersection of Fairmont Road and Riverview Avenue, as part of a larger tract of land. Stop and Shop acquired the real estate on the which its current supermarket stands in four transactions, two in 1943, and two in 1948.[1]

In 1942, the Housing and Home Finance Agency (HHFA) acquired by condemnation certain tracts of land in Grant District, Monongalia County, for a defense housing project. Out of this land, the HHFA created the Morgan Heights Subdivision. Lot 7 of the Morgan Heights Subdivision is the residential lot that Stop and Shop would like to use as a driveway and parking lot.

On 20 February 1967, the City of Westover adopted zoning ordinances creating

---

1. One of the purchases in 1948 involved a certain Lot B of Morgan Heights Subdivision, which contained a restrictive covenant against using the Lot for other than residential use. The case before us does not involve the restrictive covenant, but rather the zoning ordinances of the City of Westover and the laws of the State of West Virginia. In 1975, Stop and Shop, pursuant to a building permit, expanded its operations onto Lot B of the Morgan Heights Subdivision, which lot was zoned commercial.

zoning districts. The strip of land along Fairmont Road where the Stop and Shop's supermarket is located was zoned for business use. More specifically, all the land used by Stop and Shop for its business, before the recent purchase of Lot 7, was zoned for business. Thus, when the zoning ordinances were passed in 1967, Stop and Shop's use of its commercial land conformed to zoning ordinances. However, Lot 7 of the Morgan Heights Subdivision, which lot Stop and Shop now wants to use as a parking lot for its supermarket, was zoned residential.

On 3 July 1986, Stop and Shop bought Lot 7 of Morgan Heights Subdivision, a lot zoned R–1, residential, but which happens to be adjacent to Stop and Shop's commercial premises. On 15 February 1988, Stop and Shop applied for a building permit to demolish a house on Lot 7. Stop and Shop received the permit and demolished the house.

Stop and Shop's desire then, as now, was to replace the house with a parking lot and driveway to serve the supermarket. When some question was raised as to the validity of Stop and Shop's building permit for the work intended, Stop and Shop submitted a new application for a building permit in which it explicitly stated its intention to make a gravel parking lot and build a driveway onto Crowl Street.

According to Stop and Shop, Francis Teter, acting Mayor of Westover, advised Stop and Shop that no building permit was necessary for the improvements intended. Stop and Shop then continued work on its improvements, until 20 April 1988, when Stop and Shop was served with an order signed by Mayor Teter requiring it to cease all work on the vacant lot because it lacked the required building permit.

On 25 May 1988, after being asked by Stop and Shop to render a decision on the building permit, Mayor Teter denied Stop and Shop the building permit. Stop and Shop then appealed the Mayor's decision to the Westover Board of Zoning Appeals. On 7 July 1988, the Board of Zoning Appeals affirmed the Mayor's denial of the building permit. On 29 July 1988 Stop and Shop filed a petition for a Writ of Certiorari in the circuit court of Monongalia County. Several residents of the Crowl Street area sought to intervene in the matter, and on 1 September 1988, the circuit court granted their motion to intervene.

At the suggestion of the circuit court, the proceeding was converted to a proceeding in mandamus to compel the City of Westover to grant a building permit to Stop and Shop. On 11 November 1988, the trial court conducted a hearing in which it made findings of fact and denied the writ of mandamus on the grounds that Stop and Shop had failed to prove a clear right to the writ under the facts of the case.

We agree that Stop and Shop is not entitled to a writ of mandamus. Lot 7 of the Morgan Heights Subdivision, which Stop and Shop seeks to use for commercial purposes, has been zoned residential ever since the City of Westover zoned the land in 1967. We also know that Lot 7 does not qualify as commercial land on the grounds of any nonconforming use "grandfather exception" to the zoning ordinances, because we know that in 1988 Stop and Shop demolished a dwelling unit then standing on Lot 7.

Apparently, Stop and Shop feels that its desire to compete for the growing traffic in the area gives it the right to expand onto residential land. Stop and Shop paints for us a picture of commercial growth in its general vicinity, as if that growth justifies violations of the zoning ordinances. Its appeal is simply that Stop and Shop could be squeezed out of the supermarket business because it does not have enough parking to accommodate the increased traffic and business it seeks. Its proposed solution is to route many customers onto residential Crowl Street. Its proposed driveway onto Crowl Street would make its store attractive to customers who want to avoid approaching the supermarket from the relatively busy Fairmont Road.

If the traffic on Fairmont Road makes it dangerous to get in and out of the supermarket's current parking lot, will not sending the store traffic onto Crowl Street make that residential street more crowded

and dangerous? The encroachment of a commercial use into a residential neighborhood is one of the occurrences that zoning laws are enacted to prevent. We understand that the shortage of parking space may prevent Stop and Shop from operating the largest, most profitable supermarket imaginable, but we cannot find that the zoning ordinances deny Stop and Shop a viable use of its land.

Stop and Shop appears to believe that *W.Va.Code*, 8–24–50 [1984], which protects nonconforming uses from immediate destruction at the hands of zoning authorities, gives it the right to expand its commercial operations onto residential land. Its reliance on the statute is misplaced. In the first place, Stop and Shop's grocery store was a *conforming* use when the zoning ordinances were enacted in 1967, so *W.Va.Code*, 8–24–50 [1984], which provides a grandfather exception for nonconforming uses existing at the time of a zoning enactment is unavailing to Stop and Shop. However, Stop and Shop argues that if the statute protects nonconforming uses, why should not conforming uses be similarly protected?

Let us look at just how little protection the statute gives nonconforming uses. *W.Va.Code*, 8–24–50 [1984] provides:

> Such zoning ordinance or ordinances shall not prohibit the continuance of the use of any land, building or structure for the purpose for which such land, building or structure is used at the time such ordinance or ordinances take effect, but any alteration or addition to any land or any alteration, addition or replacement of or to any existing building or structure for the purpose of carrying on any use prohibited under the zoning rules and regulations applicable to the district may be prohibited: Provided, That no such prohibition shall apply to alterations or additions to or replacement of buildings or structures by any farm, industry or manufacturer, or to the use of land presently owned by any farm, industry or manufacturer but not used for agricultural, industrial or manufacturing purposes, or to the use or acquisition of additional land which may be required

for the protection, continuing development or expansion of any agricultural, industrial or manufacturing operation or any present or future satellite agricultural, industrial or manufacturing use. If a nonconforming use has been abandoned, any future use of such land, building or structure shall be in conformity with the provisions of the ordinance regulating the use in the district in which such land, building or structure may be located: Provided, however, That abandonment of any particular agricultural, industrial or manufacturing process, shall not be construed as abandonment of agricultural, industrial or manufacturing use.

> Nothing contained in this article shall be deemed to authorize an ordinance, rule and regulation which would prevent, outside of urban areas, the complete use and alienation of any timber and any and all minerals, including coal, oil and gas, by the owner or alienee thereof. For the purpose of this section, urban areas shall include all lands or lots within the jurisdiction of a municipal planning commission as defined in this article.

Thus, the statute contemplates that, with the exception of agricultural, industrial and manufacturing operations, nonconforming uses are barely to be tolerated. For instance, once a nonconforming use is abandoned on a particular parcel, it cannot be taken up again. Furthermore, the statute specifically provides that, "any *alteration or addition to any land* or any *alteration, addition or replacement of or to any existing building* or structure for the purpose of carrying on any use prohibited under the zoning rules and regulations applicable to the district *may be prohibited....*" [Emphasis added].

*W.Va.Code*, 8–24–50 [1984] is analogous to the "grandfather" exceptions found within zoning ordinances. In *Longwell v. Hodge*, 171 W.Va. 45, 297 S.E.2d 820 (1982), involving a grandfather exception in a zoning ordinance, we said, in Syl. Pt. 1:

> "Grandfather" exceptions to zoning regulations *contemplate the eventual extinction of the non-conforming use* and

a zoning board may reasonably conclude that the use has been abandoned once that use has been discontinued for the period prescribed in the zoning ordinance. [Emphasis added].

In the body of the opinion, we said:

A "grandfather" exception alleviates the initial hardship to the owner of non-conforming property of immediate compliance with a new ordinance. A "grandfather" clause, however, is not designed to create a continuing, protected, non-conforming use within the zoned area, running with the land and inuring indefinitely to the benefit of the owner.

*Id.*, 171 W.Va. at 48, 297 S.E.2d at 823. Thus the grandfather exception would be of no use to Stop and Shop, even if its store had constituted a nonconforming use in 1967. Moreover, Stop and Shop has not brought to our attention any statute giving the owner of a conforming use the right to expand that use onto neighboring land restricting such a use. Such a statute would defeat entirely the operation of zoning ordinances. Consequently, Stop and Shop has failed to show that it has a clear legal right to a building permit allowing it to use a residential lot as a parking lot and driveway for its supermarket.

For the reasons stated above the judgment of the Circuit Court of Monongalia County is affirmed.

Affirmed.