**FILED**

**June 3, 2026**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2026 Term

_____

No. 23-753

_____

CITY OF WEIRTON and
CITY OF WEIRTON BOARD OF ZONING APPEALS,
Respondents Below, Petitioners,

v.

SWN PRODUCTION COMPANY, LLC,
Petitioner Below, Respondent.

_____

Appeal from the Intermediate Court of Appeals of West Virginia
No. 22-ICA-83
(Circuit Court of Brooke County, Nos. CC-05-2021-P-35 and
CC-05-2021-C-71)

REVERSED
_____

AND

_____

No. 24-320

_____

SWN PRODUCTION COMPANY, LLC,
Petitioner Below, Petitioner,

v.

CITY OF WEIRTON and
CITY OF WEIRTON BOARD OF ZONING APPEALS,
Respondents Below, Respondents.

Appeal from the Intermediate Court of Appeals of West Virginia
No. 23-ICA-405
(Circuit Court of Brooke County, Nos. CC-05-2021-P-35 and
CC-05-2021-C-71)

AFFIRMED

_____

Submitted: April 22, 2026
Filed: June 3, 2026

Ryan P. Simonton, Esq.
Margaret E. Lewis, Esq.
Kay Casto & Chaney, PLLC
Morgantown, West Virginia
Counsel for the City of Weirton and
City of Weirton Board of Zoning Appeals

Shawn N. Gallagher, Esq.
Kathleen Jones Goldman, Esq.
Buchanan Ingersoll & Rooney LLP
Pittsburgh, Pennsylvania
Counsel for SWN Production Company,
LLC

JUSTICE WOOTON delivered the Opinion of the Court.

JUSTICE TRUMP, deeming himself disqualified, did not participate in the decision of this case.

JUDGE SHAWN D. NINES, sitting by temporary assignment.

**SYLLABUS BY THE COURT**

1.      "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

2.      Whether a local ordinance is inconsistent or in conflict with a state statute is a question of law that is reviewed de novo.

3.      "A municipal corporation is a creature of the State, and can only perform such functions of government as may have been conferred by the constitution, or delegated to it by the law-making authority of the State. It has no inherent powers, and only such implied powers as are necessary to carry into effect those expressly granted." Syl. Pt. 1, *Brackman's Inc., v. City of Huntington*, 126 W. Va. 21, 27 S.E.2d 71 (1943).

4.      "When a provision of a municipal ordinance is inconsistent or in conflict with a statute enacted by the Legislature the statute prevails and the municipal ordinance is of no force and effect." Syl. Pt. 1, *Vector Co. v. Bd. of Zoning Appeals of City of Martinsburg*, 155 W. Va. 362, 184 S.E.2d 301 (1971).

i

**WOOTON, Justice**:

In these two consolidated appeals we are asked to consider a zoning ordinance adopted by the City of Weirton, West Virginia. In the first appeal (No. 23-753), SWN Production Company, LLC ("SWN"), argues that the City's zoning ordinance is void to the extent that it is in irreconcilable conflict with certain state environmental laws, particularly the Natural Gas Horizontal Well Control Act. The Circuit Court of Brooke County entered an order that rejected SWN's argument and found no conflict. SWN appealed and, thereafter, the Intermediate Court of Appeals ("the ICA") issued an opinion that found a conflict and reversed the circuit court. The City appeals the ICA's opinion to this Court. Upon our review of the parties' briefs, record, and oral argument we find that the ICA erred; SWN has demonstrated no more than an incidental overlap between the authority of the Department of Environmental Protection ("the DEP") under the Horizontal Well Control Act and the authority of the City of Weirton pursuant to the Land Use Planning Act. Thus, we reverse the ICA's opinion and reinstate the circuit court's judgment.

In the second appeal (No. 24-320), the City's Board of Zoning Appeals ("the BZA") issued a decision that applied the zoning ordinance and refused to give SWN a conditional use permit. SWN thereafter petitioned the circuit court for a writ of certiorari to review the BZA's decision, but the circuit court affirmed the BZA. SWN then appealed the circuit court's certiorari ruling to the ICA, which dismissed SWN's appeal on the ground that the ICA had no jurisdiction to consider appeals regarding writs of certiorari.

1

SWN now appeals the ICA's dismissal decision. Finding no error, we affirm the ICA's dismissal of SWN's appeal.

## I. FACTUAL AND PROCEDURAL BACKGROUND

SWN holds a lease to drill for natural gas on a 301-acre tract within the City of Weirton.[1] SWN wants to construct a pad on the tract that will enable it to drill as many as fourteen different horizontal gas wells.

In June of 2021, the City and the BZA operated under a zoning ordinance known as the "Unified Development Ordinance."[2] The zoning ordinance provided that a party was required to obtain a conditional use permit from the BZA before conducting oil or gas extraction on land within the City. In accordance with the zoning ordinance, on June 7, 2021, SWN filed an application with the BZA for a conditional use permit.

The BZA conducted hearings on SWN's application on August 3 and September 7, 2021. SWN representatives presented evidence regarding their intended use of the tract (to drill and operate horizontal natural gas wells), traffic and noise

---

[1] The surface and minerals of the tract are owned by Brownlee Land Ventures L.P., and the parties call the tract the Brownlee Site.

[2] The parties refer to the City's Unified Development Ordinance as "the UDO." After SWN filed its application for a conditional use permit, on July 7, 2021, the City adopted a new Unified Development Ordinance Update, which the parties refer to as "the NUDO." Two years later the City repealed the NUDO and reinstated the UDO. Neither of the parties have identified any provision of the NUDO that was applied by the BZA. Accordingly, we do not consider it in our discussion.

considerations, and pollution and water issues. Members of the public testified and challenged SWN's traffic evidence, and various witnesses (including the manager of a nearby hotel and the owner of a residential facility about to be constructed nearby) testified complaining that the noise and increased traffic would adversely impact nearby businesses, and that the drilling operation would be an eyesore. Other individuals testified that using the tract as a natural gas well pad would have detrimental effects on the development and value of surrounding properties, and that the use would not be consistent with the City's overall development plan for the area.

On October 1, 2021, the BZA issued a lengthy opinion rejecting SWN's application for a conditional use permit. The BZA concluded that SWN's traffic projections were unreliable and contrary to the City's plans for traffic in the area. The BZA also found that SWN's application failed to address any impact of its proposed drilling on the underlying aquifer. Moreover, the BZA found "[c]ommercial development among adjoining properties . . . would be hindered or discouraged," "taking into consideration the location, nature and height of buildings . . . on the site."[3]

---

[3] The City maintains a Comprehensive Plan that indicates the area surrounding the disputed tract is planned to be a "mixed-use commercial hub" that encourages "a diverse mix of entertainment, retail, hospitality and high density residential" usage. The City further notes that the zoning ordinance establishes "development standards" setting the maximum approved height of various structures. The maximum allowed height for a "planned industrial / commercial" structure is sixty feet; SWN's proposed drilling rig would be 165 feet tall. As stated above, the BZA rejected SWN's application for multiple reasons.

On October 29, 2021, SWN filed two separate actions in the Circuit Court of Brooke County.

Regarding the first action, West Virginia Code §§ 8A-9-1(a) and -1(b) (2004) provide that "[e]very decision or order of the . . . board of zoning appeals is subject to review by certiorari" in "the circuit court of the county in which the affected premises are located[.]" Following the statutory process, SWN filed a petition for a writ of certiorari appealing from the BZA, and in that petition asked the circuit court to reverse the BZA's decision denying the conditional use permit.

In the second action, SWN filed a complaint against the City seeking a declaratory judgment that the City's zoning ordinance was preempted by State statutes and regulations. Specifically, SWN asserted that State law gave the DEP the exclusive power to regulate all oil and gas environmental protection programs in the State, while there is no law giving that power to municipalities. The circuit court consolidated the two actions and stayed a ruling on the certiorari appeal of the BZA's decision until it resolved SWN's declaratory judgment action.

The record indicates that after SWN received the BZA's adverse ruling, but prior to filing the two actions in the circuit court, on October 18, 2021, SWN filed an application with the DEP for a permit to drill a horizontal natural gas well on the Weirton tract. Several months after SWN filed its circuit court actions, on February 8, 2022, the

4

DEP issued the permit; SWN filed its "First Amended Verified Complaint," on March 29, 2022, in which it added an allegation that the DEP had granted it a drilling permit.

In arguments to the circuit court, SWN claimed that the Legislature gave the DEP the sole authority to regulate the environmental impact of drilling natural gas wells under the Oil and Gas Act (W. Va. Code §§ 22-6-1 to -41) and the Natural Gas Horizontal Well Control Act (W. Va. Code §§ 22-6A-1 to -26). SWN argued that the City's zoning ordinance was in direct conflict with these statutes, and that these statutes completely precluded any regulation by municipalities of the location of drilling operations, particularly since the DEP had issued SWN a permit to drill a well on the Weirton tract. The City, however, asserted that there was a separate statutory scheme, the Land Use Planning Act (W. Va. Code §§ 8A-1-1 to 8A-13-4), that gave municipalities and counties the power to adopt zoning ordinances to regulate the use and orderly development of land within their boundaries to promote the health, safety, comfort, morals and general welfare of the public. The City pointed out that nothing in the Oil and Gas Act or the Horizontal Well Control Act specifically prevented the adoption of an ordinance regulating, within the boundaries of a municipality, a property owner's use of land to extract natural resources.

On August 23, 2022, the circuit court entered an order rejecting SWN's position and finding no conflict between the City's zoning ordinance and the State's environmental laws and regulations. The circuit court specifically found that neither the Oil and Gas Act nor the Horizontal Well Control Act conflicted with the application of the City's zoning ordinance to natural gas exploration and drilling activities within the City.

5

The court stated: "Local zoning ordinances and regulations allow communities to deal with the potential impacts of various type[s] of business activities within their city limits – including oil and gas drilling and operations[.]" The circuit court further stated that, "where there has been no express, clear, and unequivocal statement by our State's legislature," it was "not prepared to make a finding that local municipalities can no longer deal with [oil and gas drilling] issues by the use of zoning ordinances[.]" Finding no conflict between State law and the City's zoning ordinance, the circuit court dismissed SWN's amended complaint, to the extent "it allege[d] a facial pre-emption challenge to all West Virginia zoning laws . . . ." Finally, the court found the order to be a final appealable order. *See* W. Va. R. Civ. Pro. 54(b) (2025).

Before the circuit court, the parties then proceeded to resolve the merits of SWN's certiorari appeal of the BZA's decision. The circuit court permitted SWN to present additional testimony and evidence, and it heard arguments from the parties. In a fifty-seven-page order dated August 16, 2023, the circuit court affirmed the BZA's decision to deny SWN a conditional use permit. The court found evidence supporting the BZA's denial decision based on SWN's land use "being incompatible with the goals of the [City's] Comprehensive Plan to promote continued mixed-use development" of the area, "hindering or discouraging use of adjacent land or buildings," and "being detrimental to the public interest due to increasing truck traffic in a congested mixed-use commercial area." Finding no error, the circuit court affirmed the BZA's decision.

6

SWN separately and timely appealed both of the circuit court's orders to the ICA. SWN appealed the circuit court's August 23, 2022, declaratory judgment dismissal order, and the ICA docketed the appeal as No. 22-ICA-83. SWN appealed the circuit court's August 16, 2023, certiorari order affirming the BZA, and the ICA docketed the case as No. 23-ICA-405. The ICA considered SWN's appeals separately, and it issued two decisions.

First, in a signed opinion filed on November 1, 2023, the ICA reversed the circuit court's order dismissing SWN's amended complaint and found the City's zoning ordinance conflicted with, and was preempted[4] by, State statutes. *SWN Prod. Co., LLC v. City of Weirton*, 249 W. Va. 372, 895 S.E.2d 227 (Ct. App. 2023). The ICA focused on language within the Horizontal Well Control Act that gives the DEP "sole and exclusive authority to regulate the permitting, location, . . . and any and all other drilling and production processes . . . of oil and gas wells and production operations within the state." W. Va. Code § 22-6A-6(b). The ICA was also persuaded by the DEP's issuance of a permit to SWN, finding that "[o]nce the [DEP] issued a permit" to allow SWN to drill the well,

---

[4] The ICA applied a preemption analysis that is typically applied to conflicts between state and federal laws under the Supremacy Clause to the United States Constitution. *See* U.S. Const. art. VI, cl. 2. While that analysis was not technically incorrect, this Court has not utilized the Supremacy Clause preemption rubric when considering the interaction of local ordinances and state law. In our discussion, and for the sake of simplicity, we choose to analyze the parties' arguments using our preexisting, long-standing rules for analyzing whether a municipality's exercise of its zoning authority is inconsistent or in conflict with State licensing or permitting authority. *See, e.g.*, *Longwell v. Hodge*, 171 W. Va. 45, 297 S.E.2d 820 (1982).

"the City cannot hinder SWN's ability to begin drilling." 249 W. Va. at 381, 895 S.E.2d at 236. The ICA concluded that the City's zoning ordinance and the BZA's "approval scheme is in direct conflict with the Horizontal Well Control Act which vests [the DEP] with 'sole and exclusive authority' to regulate the 'permitting' and 'location' of horizontal gas wells." *Id*.[5] In case No. 23-753, the City now appeals the ICA's opinion.

Second, in a memorandum decision dated April 22, 2024, the ICA refused to consider the merits of SWN's appeal of the circuit court's certiorari decision (which affirmed the BZA's denial of a conditional use permit). *SWN Prod. Co., LLC v. City of Weirton Bd. of Zoning Appeals*, No. 23-ICA-405, 2024 WL 1730044 (W. Va. Ct. App. Apr. 22, 2024) (memorandum decision). SWN presented its case to the circuit court through filing a petition for a writ of certiorari. The ICA noted that it is a court of limited jurisdiction that expressly did not have appellate jurisdiction over "any appeal of a decision

---

[5] The ICA did identify one supposed "conflict" between the language of the Horizontal Well Control Act and the City's zoning ordinance. The Act provides that the center of gas drilling pads "may not be located within six hundred twenty-five feet of an occupied dwelling structure[.]" W. Va. Code § 22-6A-12(a) (2011). The City's original (and current) zoning ordinance (the UDO) provides that no oil or gas "well may be located closer than two hundred (200) feet to any residential use." City of Weirton, West Virginia Unified Development Ordinance § 9.6(24) (Sept. 2005). However, *after* SWN filed its application for a conditional use permit, the City amended its zoning ordinance to impose a setback of 2,500 feet from a well pad to any residential use (the NUDO, *see infra*, footnote 2), but the City then repealed that amendment and reinstated the 200-foot limitation before SWN's first appeal was argued before the ICA. Despite the repeal of the NUDO, the ICA found the repealed 2,500-foot limitation in clear conflict with the State's 625-foot setback. *SWN Prod. Co.*, 249 W. Va. at 380, 895 S.E.2d at 235. These distance requirements were never applied to SWN's conditional use application by the City or the BZA, so we see no merit to this conflict finding by the ICA.

8

or order of another court regarding an extraordinary remedy." W. Va. Code § 51-11-4(d)(10) (2022). Because certiorari is an extraordinary remedy, and the circuit court's order was a decision regarding an extraordinary remedy, the ICA concluded that it did not have jurisdiction over SWN's appeal and, therefore, dismissed the appeal as improvidently docketed. *SWN Prod. Co.*, 2024 WL 1730044 at *3. In case No. 24-320, SWN now appeals the ICA's dismissal decision.

On July 29, 2025, we consolidated the parties' separate appeals for consideration.

## II. STANDARD OF REVIEW

The City's appeal asks that we examine the ICA's opinion reversing the circuit court's dismissal of a portion of SWN's Amended Complaint and hold that the ICA erred in its interpretation of the overlap between the State's environmental statutes and the City's zoning ordinance. Regarding statutes, "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995). Additionally, "this Court engages in a de novo analysis in reviewing decisions of the lower courts involving the application of zoning ordinances to property use." *City of Morgantown v. Calvary Baptist Church*, 243 W. Va. 578, 586, 849 S.E.2d 150, 158 (2020). Finally, we find that our review of whether a local ordinance is inconsistent or in conflict with a state statute is a question of law that is reviewed de novo.

9

SWN's appeal asks that we examine the ICA's assessment of its subject-matter jurisdiction. Whether a court has subject-matter jurisdiction is a question of law we review de novo. *See* Syl. Pt. 2, *In re K.A.*, 251 W. Va. 626, 915 S.E.2d 520 (2025); *Snider v. Snider*, 209 W. Va. 771, 777, 551 S.E.2d 693, 699 (2001).

### III. DISCUSSION

**A. The City's Appeal**

The City asserts that the ICA erred when it found an irreconcilable conflict between State law and the City's zoning ordinances. It urges us to reverse the ICA's decision, arguing that the statewide environmental regulations contained within the Horizontal Well Control Act do not conflict with the City's zoning ordinance, which is specifically authorized under the Land Use Planning Act. The City further argues that, while the City's zoning regulations may overlap with the State's environmental regulations, any "interference is the coincidental by-product of the municipal zoning board's legitimate pursuit of its delegated goals" under the Land Use Planning Act. *Longwell*, 171 W. Va. at 50, 297 S.E.2d at 825.

SWN responds that the DEP's issuance of a permit to drill a well within the City trumps the City's application of its ordinance and conditional use permit process. SWN contends that the ICA correctly found that the Horizontal Well Control Act specifically accords sole and exclusive authority to the DEP to regulate the permitting and location of horizontal gas wells. It further argues the Act clearly conflicts with the City's

10

zoning ordinance and precludes the City from regulating the use of land for production of gas by way of horizontal drilling. As we discuss below, we agree with the City's position.

We begin our analysis with the fundamental rule that "[m]unicipalities are but political subdivisions of the state, created by the legislature for purposes of governmental convenience, deriving not only some, but all of their powers from the legislature." *Booten v. Pinson*, 77 W. Va. 412, 421, 89 S.E. 985, 989 (1915). A municipality possesses only the power and authority delegated to it by the Legislature:

> A municipal corporation is a creature of the State, and can only perform such functions of government as may have been conferred by the constitution, or *delegated to it by the law-making authority of the State*. It has no inherent powers, and only such implied powers as are necessary to carry into effect those expressly granted.

Syl. Pt. 1, *Brackman's Inc., v. City of Huntington*, 126 W. Va. 21, 27 S.E.2d 71 (1943) (emphasis added).

Relevant here, in the Land Use Planning Act, the Legislature delegated to local governing bodies the power to plan the orderly development of land within their communities so that "the needs of agriculture, residential areas, industry and business be recognized in future growth[.]" W. Va. Code § 8A-1-1(a)(6) (2004). Pursuant to the Land Use Planning Act, the purposes of a municipality's zoning ordinance include planning for "adequate light, air, convenience of access and safety from fire, flood and other danger," "[l]essening congestion," "[p]reserving agricultural land," and "[p]romoting the orderly development of land" within the municipality. W. Va. Code § 8A-7-2(a)(2), -(4), -(6), and

11

-(7) (2009). To that end, the Legislature authorized municipalities to "regulate land use within [their] jurisdiction by: (1) Adopting a comprehensive plan; . . . [and] (3) Enacting a zoning ordinance." W. Va. Code § 8A-7-1(a) (2004). The Legislature specifically allowed that "[a] zoning ordinance may include . . . [r]egulating the use of land and designating or prohibiting specific land uses," as well as "[d]ividing the land of the governing body into different zone classifications regulating the use of the land," among other considerations. W. Va. Code § 8A-7-2(b)(1), (6) (2009). If a municipality enacts a zoning ordinance (which the City did), then "as part of that zoning ordinance it shall create a board of zoning appeals to hear appeals on zoning," and "decide conditional uses of the zoning ordinance . . . ." W. Va. Code §§ 8A-8-1, -9(3) (2004). Thus, the City and the BZA exercised the zoning authority granted to them by the Legislature by hearing and deciding SWN's application for a conditional use permit.

Likewise, the DEP exercised the authority granted to it by the Legislature when it considered SWN's application for a drilling permit and granted the permit. Chapter 22 of the West Virginia Code, which encompasses the Horizontal Well Control Act and the Oil and Gas Act, was designed by the Legislature to ensure "[e]fficiency in the wise use, enhancement, preservation, protection and conservation of the environment[.]" W. Va. Code § 22-1-1(a)(4). Other purposes of Chapter 22 include "[r]estoring and protecting the environment," "to protect human health and safety," and to "promote economic development consistent with environmental goals and standards." W. Va. Code § 22-1-1(a)(1), -1(a)(5). In the Horizontal Well Control Act, specifically, the Legislature granted

the DEP Secretary "sole and exclusive authority to regulate the permitting, location, spacing, drilling, fracturing, stimulation, well completion activities, operation, enhanced recovery, any and all other drilling and production processes, plugging and reclamation of oil and gas wells and production operations within the state." W. Va. Code § 22-6A-6(b); *see also* W. Va. Code § 22-6-2(a) ("The secretary shall have as his or her duty the supervision of the execution and enforcement of matters related to oil and gas set out in § 22-6-1 *et seq.,* § 22-6A-1 *et seq. . . . .*").

In these circumstances, the DEP's permitting authority and the City's zoning authority touched upon the same object of regulation: SWN's proposed drilling project located within the City. Contrary to SWN's position, that overlap does not create an irreconcilable conflict that invalidates or voids the City's zoning ordinances, wholesale. *See* Syl. Pt. 1, *Vector Co. v. Bd. of Zoning Appeals of City of Martinsburg*, 155 W. Va. 362, 184 S.E.2d 301 (1971) ("When a provision of a municipal ordinance is inconsistent or in conflict with a statute enacted by the Legislature the statute prevails and the municipal ordinance is of no force and effect."). *See also*, W. Va. Const. art. VI, § 39(a) (a city "may pass all laws and ordinances relating to its municipal affairs" but "any such law or ordinance so adopted, shall be invalid and void if inconsistent or in conflict with this constitution or the general laws of the state[.]"); W. Va. Code § 8-1-2(9) (2022) (for purposes of Chapter 8 of the West Virginia Code, defining "[i]nconsistent or in conflict with" to "mean that a charter or ordinance provision is repugnant to the constitution of this state or to general law because such provision: (i) Permits or authorizes that which the

13

constitution or general law forbids or prohibits; or (ii) forbids or prohibits that which the constitution or general law permits or authorizes"). Rather, it is a "'false conflict'" that is the result of the City, the BZA, and the DEP's "legitimate pursuit of [their] delegated goals." *Longwell*, 171 W. Va. at 49-50, 297 S.E.2d at 824-825.

This principle was best expressed in *Longwell v. Hodge*, where a restaurant operator secured a beer license from the State, under State laws and regulations. *Id.* at 47, 297 S.E.2d at 822. Later, the city's "Zoning Commission . . . determined that a use of the restaurant to sell beer would neither conform to the [city's zoning] ordinance nor fall within the non-conforming use provisions of the ordinance," *id.* (internal note omitted), and so refused to approve the use of the restaurant to sell beer. On appeal, the restaurant operator argued that

> the State's approval of their application for a beer license is effectively overruled by the Board of Zoning Appeals' denial of permission to the [restaurant operator] to sell beer at this restaurant and that resolution of this conflict in favor of the Board would be inimical to the policy of State control over the sale of liquor and beer.

*Id.* at 49, 297 S.E.2d at 824.

In *Longwell*, we rejected the restaurant operator's assertion of an irreconcilable conflict between State law and the local ordinance. We labeled the overlap between State and local regulation as a "false conflict," *id.*, and noted that,

> The grant of authority to municipalities to control their development with zoning provisions comes from the State, and there can be no doubt that the State is sovereign over its

14

municipalities. The conflict in this case, such as it is, is between the municipality's power to enforce the zoning authority delegated to it by the State, *W.Va. Code,* 8-24-39 [1969] and the power of the West Virginia non-intoxicating beer commissioner to enforce the licensing authority delegated to him by the State, *W.Va. Code,* 11-16-18 [1951].

*Id*. at 49, n.4, 297 S.E.2d at 824, n.4. Ultimately, in *Longwell*, we held that,

> In the absence of a statute expressly preempting[6] to the State the right exclusively to control whether and where beer will be sold, the possession of a State beer license is merely a necessary, but not a sufficient, condition for its sale in municipalities whose properly enacted zoning ordinances regulate the whereabouts of beer-selling restaurants.

---

[6] SWN cross-assigns error to the ICA's decision, asserting that the ICA "could have also found that the City Zoning Regulations are preempted under" express preemption and implied field preemption. We disagree. The party seeking to establish express preemption must point to "specific and plain language" demonstrating legislative intent "to preempt [a] specific field . . . ." *Morgan v. Ford Motor Co.*, 224 W. Va. 62, 69, 680 S.E.2d 77, 84 (2009). The "sole and exclusive" phrase in West Virginia Code § 22-6A-6(b) does not amount to such language when compared to other instances where the Legislature has expressly stated its intent that certain uses "shall be classified as permitted uses and not subject to zoning review or approval . . . ." *Id*. § 31H-2-2 (2019) (providing that "[s]mall wireless facilities" are not subject to zoning review or approval in certain, enumerated instances); *cf.* W. Va. Code 8-12-13(b) (2017) (directing that "all existing building municipal building codes are void one year after the promulgation of a state building code by the State Fire Commission"). The federal Employee Retirement and Income Security Act contains the classic example of an exemption clause: "the provisions of this subchapter and subchapter III shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title . . . ." 29 U.S.C. § 1144(a) (2006). And, given our insistence in Syllabus 2 of *Longwell* upon a "statute expressly preempting to the State the right exclusively to control whether and where" the regulated activity may occur, we are not persuaded by SWN's argument that the City's zoning ordinances are impliedly preempted by the Horizontal Well Control Act, in their entirety.

*Id.*, Syl. Pt. 2, 171 W. Va. at 46, 297 S.E.2d at 821. And so it is, here: like the restaurant in *Longwell*, the drilling operation proposed by SWN is subject to state regulation and municipal zoning ordinances.

"That municipal ordinances are inferior in status and subordinate to legislative acts is a principle so fundamental that citation of authorities is unnecessary." *Vector Co.*, 155 W. Va. at 367, 184 S.E.2d at 304. Our conclusion does not offend that principle. SWN did not identify in the Amended Complaint a specific City ordinance that "prohibit[s it] from engaging in precisely the activity . . . that has been sanctioned by a state permit," but rather pointed only to the BZA's ultimate decision to deny the conditional use permit. *EQT Prod. Co. v. Wender*, 870 F.3d 322, 332 (4th Cir. 2017) (observing that "well-established principles of West Virginia law" prohibit "a West Virginia county" from "enacting a blanket prohibition on conduct specifically licensed by the state.") (citing *Brackman's, Inc.*, 126 W. Va. at 22-23, 27 S.E.2d at 72). Nor did SWN identify in the Amended Complaint a specific City ordinance that is inconsistent with or in conflict with a specific statute. Instead, SWN pled that, "[t]he City's ordinances, which effectively prohibit drilling in the City, are in conflict with the West Virginia Oil and Gas Act, codified at W. Va. Code §§ 22-6-1 *et seq.*" While SWN's amended complaint contained detailed allegations regarding the NUDO, neither the BZA's decision nor the circuit court's decision to affirm the BZA rest on the NUDO.[7] Without such allegations, this Court cannot

---

[7] According to SWN's amended complaint, the "UDO only contained two objective standards relating to conditional uses for oil and gas extraction activities . . . ."

Continued . . .

16

determine whether, as SWN argues, a City zoning ordinance conflicts with or is inconsistent with a state statute as a matter of law.

Accordingly, we find that the circuit court correctly dismissed SWN's amended complaint insofar as SWN sought a declaration that state statutes regulating the production of oil and natural gas preempt the City's zoning ordinance in its entirety. Thus, the ICA's decision must be reversed, and the circuit court's decision reinstated.

## B. SWN's Appeal: The jurisdiction of the ICA

SWN generally appeals the BZA's decision to deny it a conditional use permit. More specifically, SWN contends that the ICA erred in dismissing SWN's appeal on the ground that the ICA had no subject-matter jurisdiction to consider the BZA's decision, because it was presented to the circuit court by way of a petition for a writ of certiorari. We, however, find no error in the ICA's dismissal of SWN's appeal.

As we noted earlier, the Land Use Planning Act specifies that every decision by a "board of zoning appeals is subject to review by certiorari" through a "duly verified petition for a writ of certiorari" "to the circuit court of the county in which the affected premises are located[.]" W. Va. Code § 8A-9-1(a), -(1)(b). Once a circuit court rules on the certiorari petition, the Land Use Planning Act directs that "[a]n appeal may be taken to the

Those are that "[n]o well may be located closer than two hundred (200) feet to any residential use," and that "oil and gas exploration shall be subject to the Oil and Gas Laws, Chapter Twenty-two, Article Four, of the Code of West Virginia, as amended, and the rules and regulations of the West Virginia Department of Environment Protection."

17

West Virginia Supreme Court of Appeals from the final judgment of the court or judge[.]" W. Va. Code § 8A-9-7 (2004). Stated simply, the Land Use Planning Act does not authorize appeals of zoning enforcement decisions to the ICA. Jurisdictionally, the appeal should have been made directly from the circuit court to this Court.

Furthermore, "[c]ertiorari is an extraordinary remedy[.]" Syl. Pt. 1, in part, *Poe v. Marion Mach. Works*, 24 W. Va. 517, 517 (1884). At the time of SWN's appeal to the ICA, West Virginia Code § 51-11-4(d)(10) (2022) specified that "[t]he Intermediate Court of Appeals does not have appellate jurisdiction over . . . [e]xtraordinary remedies[.]" In June 2024, the ICA's jurisdictional statute was amended to further clarify that the ICA does not have jurisdiction over judgments involving extraordinary remedies such as a "writ of certiorari[.]" W. Va. Code 51-11-4(d)(10) (2024). "As such, the ICA plainly lacked jurisdiction over [SWN's] appeal." *Huntington Realty Corp. v. City of Huntington Bd. of Zoning Appeals*, No. 23-743, 2025 WL 2652776, at \*2 (W. Va. Sept. 16, 2025) (memorandum decision).

We therefore affirm the ICA's memorandum decision dismissing SWN's appeal.

## IV. CONCLUSION

For the foregoing reasons, we reverse the ICA's opinion in *SWN Prod. Co., LLC v. City of Weirton*, 249 W. Va. 372, 895 S.E.2d 227 (Ct. App. 2023), and reinstate the circuit court's order dismissing SWN's amended complaint "insofar as it alleges a facial

18

pre-emption challenge to all West Virginia zoning laws . . . ." We affirm the ICA's

memorandum decision in *SWN Prod. Co., LLC v. City of Weirton Bd. of Zoning Appeals*,

No. 23-ICA-405, 2024 WL 1730044 (W. Va. Ct. App. Apr. 22, 2024), because the ICA

plainly did not have subject-matter jurisdiction to consider the appeal.

                                  Appeal No. 23-735 is Reversed.

                                  Appeal No. 24-320 is Affirmed.

19